

**ORDERED in the Southern District of Florida on March 9, 2023.**

                                     _____
                                     **Mindy A. Mora, Judge**
                                     **United States Bankruptcy Court**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| AUBSP Ownerco 8, LLC, | Case No. 22-18613-MAM |
| AUBSP Ownerco 9, LLC, | Case No. 22-18614-MAM |
| | (Jointly Administered under |
| Debtors. | Case No. 22-18613-MAM) |
| _____/ | |

## ORDER DENYING MOTION TO DISMISS (ECF NO. 32 IN CASE NO. 22-18613)

Debtors AUBSP Ownerco 8, LLC and AUBSP Ownerco 9, LLC (collectively, "Debtors") filed their bankruptcy cases (as jointly administered, the "Bankruptcy Cases") on November 4, 2022. Approximately 3 weeks later, 487 Morris Associates LLC and TJV Associates LLC (collectively, "Creditors") filed a motion to dismiss

Debtors' bankruptcy cases (ECF No. 32) (the "Motion").[1] The Court conducted a comprehensive hearing (the "Hearing") on the Motion on January 27, 2023, and authorized the parties to file documentary exhibits in connection with the hearing to facilitate the Court's consideration of the legal issues raised by the Motion. At the conclusion of the Hearing, the Court took the matter under advisement. This Order constitutes the Court's ruling on the issue of dismissal and provides additional clarity regarding the significance of the Court's prior orders granting stay relief (ECF Nos. 107 and 108).

A. Procedural History and Background

In the Motion, Creditors asserted that Debtors filed their Bankruptcy Cases in bad faith. Creditors primarily contended that the bankruptcy filing was part of a strategy to avoid compliance with an Idaho state court judgment (the "Idaho Judgment")[2] presently on appeal (the "Idaho Appeal"). Debtors elected not post a supersedeas bond or seek a stay pending appeal of the Idaho Judgment (as later amended, the "Amended Idaho Judgment"),[3] but the filing of the Bankruptcy Cases nonetheless temporarily delayed state court proceedings.[4]

---

[1] For ease of reference, the Court will refer to documents by ECF number in Case No. 22-18613. The Debtors subsequently filed a motion to jointly administer Debtors' cases (ECF No. 7), which the Court granted by Order entered on November 17, 2022 (ECF No. 18).

[2] The term "Idaho Judgment" refers to the 35-page *Memorandum Decision and Order on Motions for Summary Judgment and to Strike* entered by the District Court of the Fourth Judicial District of the State of Idaho I, in and for the County of Ada, in Case No. CV01-21-07907. *See* ECF No. 32-1 (Exhibit A).

[3] The term "Amended Idaho Judgment" refers to a 7-page document providing for specific performance, declaratory judgment, and quieting title as to the real properties described therein. ECF No. 32, pdf p. 276 (also located at ECF No. 95-7, pdf p. 2). This document amends the Idaho Judgment.

[4] The Court granted stay relief on February 2, 2023 to permit Debtors to pursue an appeal of the Idaho Judgment and the Amended Idaho Judgment, and to permit Creditors to likewise participate in that

2

Through a series of responsive filings to the Motion, including supplemental notices with copious exhibits, Debtors countered that their intent to reorganize is genuine. An apparent lack of tangible assets handicaps their argument, as does a very limited pool of creditors. Debtors' schedules and statement of financial affairs reflect only one claim with substantial designated value that is held by a third party.[5] Debtors' principal, Richard Sabella, holds all other comparatively high-value claims, either directly or indirectly.

Debtors pin their reorganization hopes upon the viability of several causes of action asserted in a related adversary proceeding (Adv. Proc. No. 23-01013) (the "Adversary Proceeding"). Those causes of action are:

- Fraudulent transfer (11 U.S.C. § 548 (1)(a))

- Recovery of property (11 U.S.C. § 550)

- Breach of contract

- Breach of implied covenant of good faith and fair dealing

- Intentional interreference with prospective economic advantage

- Civil conspiracy

- Violation of Idaho consumer protection act

- Equitable subordination (11 U.S.C. § 510 )

---

appeal, and to "permit all parties in interest to seek relief related to the Idaho Litigation and to allow the Courts in Idaho to issue orders and address matters therein as they deem appropriate, including any actions to effectuate, enforce, or realize upon the Judgment or any related orders.". See ECF Nos. 107 and 108 (defined terms have the meaning provided for such terms in the stay relief motion filed by Creditors (ECF No. 50).

[5] ECF No. 30, at p. 2 (Creditor #3) and ECF No. 19 in Case No. 22-18614 at p.2 (Creditor #3). Debtors' prepetition counsel, Stoel Rives LLP, is the creditor.

The ultimate success of Debtors' Adversary Proceeding claims is not presently at issue and the Court intentionally refrains from addressing that topic today. That being said, the correlation between the potential success of those causes of action and use of any related recovery to fund a reorganization cannot be ignored in light of Debtors' scant tangible assets available for financing continued operations, covering the cost of a supersedeas bond in Idaho, or distribution to creditors as part of a plan.

Creditors argued that Debtors' reorganization prospects are fueled largely by hopes pinned to the ultimate determination of issues raised in the Idaho Appeal. That argument has traction because Debtors' ability to pursue at least some of the claims in the Adversary Proceeding will likely depend upon the eventual outcome of the Idaho Appeal. On the flip side, should Debtors prevail in the Idaho Appeal, vacatur of the Idaho Amended Judgment would change the factual landscape in which the claims raised in the Adversary Proceeding might be litigated. That turn of events would raise new possibilities for Debtors' ability to proceed in this Court.

But the question for today is not if Debtors will prevail in state court, which is of course beyond this Court's purview, but whether the Bankruptcy Cases must be dismissed. At this point, the Court believes that dismissal is premature.

B. <u>Dismissal Standard</u>

Creditors argued that Debtors' Bankruptcy Cases are "textbook examples of bad faith filings"[6] under long-standing case law from the Eleventh Circuit Court of

---

[6] ECF No. 32, introduction.

Appeals.[7] Within this district, bankruptcy courts typically apply a list of factors to evaluate whether a chapter 11 bankruptcy case has been filed in bad faith. In *In re Phoenix Piccadilly, Ltd.*, the Eleventh Circuit encouraged bankruptcy courts to consider any factors that evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions," and specifically noted that the bankruptcy court overseeing Phoenix Piccadilly's bankruptcy case had identified the following factors as indicative of a bad faith filing:

> (i) The debtor has only one asset, the property, in which it does not hold legal title;
> (ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
> (iii) The debtor has few employees;
> (iv) The property is the subject of a foreclosure action as a result of arrearages on the debt;
> (v) The debtor's financial problems involve essentially a dispute between the debtor and its secured creditors which can be resolved in a pending state court action; and
> (vi) The timing of the bankruptcy filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

849 F.2d 1393, 1394–95 (11th Cir. 1988).

Debtors candidly admitted that several of the *Phoenix Piccadilly* factors are present in the Bankruptcy Cases. Nevertheless, Debtors strenuously argued that, despite the presence of those factors, the Bankruptcy Cases represent a valid and legitimate attempt to reorganize in the face of extreme adversity.

Debtors' filings collectively recounted an involved and elaborate scheme of alleged deception, all of which purportedly coalesced in entry of the Idaho Amended

---

[7] *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (citing *In re Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984)).

5

Judgment and Debtors' resulting forfeiture of real property held by two prepetition special purpose entities. Those entities, RA2 Boise-Overland L.L.C. and RA2 Boise-Fairview L.L.C. (collectively, the "RA2 SPEs"), were the predecessors in interest to Debtors and prepetition defendants in the Idaho state court proceedings.[8]

C. The Financing Agreements

Each of the RA2 SPEs owned one parcel of real property with a Rite-Aid drugstore on the premises. Through a complicated financing arrangement engineered in the late 1990s, Sabella set up a tax arbitrage scheme that required the separation of each of the RA2 SPEs into two distinct sub-entities. This bifurcation permitted the holder of one sub-entity to reap the benefit of tax deductions (typically by purchasing the membership interest in the sub-entity, donating the interest to a charity, and then claiming a tax deduction for the full value of the purchase), while the holder of the other sub-entity essentially waited a term of years for a future loan maturity date. On or before that date, the holder of the "term of years" entity would (ideally) successfully exercise an option to repurchase the tax-deduction "remainder" sub-entity. Once rejoined, the reconstituted entity would then "redeem" its option to assert legal title to the real property through tender of a large balloon payment to a secured lender.[9]

---

[8] For all intents and purposes relevant to this Order, the RA2 SPEs are the present-day Debtors.

[9] For additional description, see the Idaho Judgment, at ECF No. 32, Exhibit A. The Idaho Judgment provides a primer on the nuances of the financing arrangement, tax benefits, and risks associated with separation of the entities. The Court's avoidance of terminology unique to the financing arrangement in favor of "plain speak" in no way indicates a lack of understanding of the process.

Sabella, through various business entities, employed this financing and business strategy to create a source of revenue from Debtors' predecessors that endured for approximately twenty years. Sabella's financing plan had a deadline, however, one that eventually became the proverbial ticking time bomb. In order to avoid permanent loss of title to the real property many years later, the financing arrangement required Sabella, or entities controlled by Sabella, to consolidate the two sub-entities prior to the maturity date of the loan held by the secured lender.

The financing agreements required two things prior to the end of a stated contractual term: (i) Sabella had to own, directly or indirectly, both sub-entities and (ii) Sabella, directly or indirectly, had to tender a substantial balloon payment to the secured lender. Failure to tender payment would result in immediate forfeiture of title to the underlying real property.[10] For many years and in connection with many properties, Sabella was able to recapture all sub-entities and proceed as he wished.

In the case of Debtors, however, Sabella's plan went awry. For reasons that are not presently before this Court to determine, Sabella was unable to recoup the legal interests of the sub-entities and tender payment prior to the expiration of the required deadline. After extensive (and seemingly bitter) litigation, the Idaho state court determined that Debtors had forfeited the right to hold legal title to the real properties. The Idaho Amended Judgment therefore mandated transfer of title to Creditors.

---

[10] For simplicity's sake, the Court has summarized the transactions, which were achieved through a series of related agreements, in broad terms. In truth, the arrangement required an insurer intermediary who stepped in to satisfy payment if Sabella's entities did not timely do so. That repayment triggered an automatic transfer of title to the property, subject to the subsequent delivery of a properly executed deed of transfer. All of these nuances are described in the underlying financing documents. *See* ECF No. 36-1, pp. 12-364.

The Idaho Judgment provides a detailed explanation of the basis for its entry. The Idaho state court engaged in a comprehensive review and analysis of the financing documents giving rise to the tax arbitrage scheme, the bifurcation of the entitles, the allocation of risk associated with all aspects of the transaction over the course of approximately twenty years, and the benefits derived from the transaction.

D.  <u>Dismissal Analysis</u>

Debtors filed the Bankruptcy Cases about three months after entry of the Idaho Amended Judgment and shortly after filing an appeal of that judgment. Against this backdrop of complex financing arrangements and prior disputes, the Court must now decide the question of dismissal. To simplify a very complicated question, the Court determines that it is too soon to tell whether the Bankruptcy Cases represent a last-ditch effort to thwart enforcement of a state court judgment, or are instead an entirely valid business maneuver that makes an intelligent and legally supportable use of intangible assets.

Without finality in the state court litigation, the Court cannot properly evaluate the remaining assets available to Debtors to administer in their Bankruptcy Cases. This "limbo" state limits the Court's ability to assess the claims asserted in the Adversary Proceeding, which in turn bears upon the ultimate question of whether the Bankruptcy Cases serve any true reorganization purpose. The Court will explain why the Debtor's reorganization prospects (and resultant good faith or lack thereof in pursuing chapter 11 relief) will not be known until after resolution of the Idaho Appeal.

### E. <u>The Importance of Stay Relief</u>

The Idaho Amended Judgment required specific performance by Debtors. The precise wording employed in the Amended Judgment required Debtors to "execute and deliver to TJV the Transfer Documents in the forms agreed to and provided by TJV in accordance with the Insured Covenants Agreements …".[11]

This language is not ambiguous. Whatever the "agreed to" form is, that is what Debtors must sign, at least under the language that is presently enforceable by the Idaho state court. Debtors have posited multiple times in this Court that signing the "agreed to" forms of the Transfer Documents runs the risk of Debtors' waiving valid claims, ones that Debtors wish to assert in this Court to support a reorganization effort. Just recently, Debtors once again sought to invoke the jurisdiction of this Court, strenuously asserting that they cannot and should not be required to yield claims that are only assertible in a bankruptcy court.[12]

The trouble is that Debtors are putting the cart before the proverbial horse. This Court cannot and will not unravel the intent plainly stated in the Idaho Amended Judgment. Whatever claims Debtors hold <u>after</u> compliance with the Idaho Amended Judgment (which was entered prepetition), and the resolution of all appeals relating to that judgment, will determine the assets available for Debtors' reorganization efforts. The remaining rights, claims, and causes of action are what will be property of the Debtors' bankruptcy estate—nothing more and nothing less.

---

[11] ECF No. 32, pdf p. 276 (also located at ECF No. 95-7, pdf p. 2).

[12] *See Emergency Motion to Clarify Stay Relief Order to Avoid TJV Associates, LLC and 487 Morris Associates, LLC's Attempts to Eviscerate Debtors' Appellate Rights and Bankruptcy Claims* (ECF No. 139).

F. <u>Property of the Estate and Jurisdiction</u>

The property of Debtors' estate includes whatever claims remain to be asserted after completion of the Idaho Appeal. This Court cannot manufacture a property interest that does not exist. Because property rights are created and defined by state law, nothing in the Bankruptcy Code empowers this Court to create estate property.[13] What the Court can do is determine what is or is not property of the estate. Because of the uncertainty surrounding the finality of the Amended Idaho Judgment, this Court must abstain from any determination that might adversely impact the ability of the Idaho state courts to interpret and enforce their own orders.

And, at this point the Court must clarify yet another point: the Court's ruling today embraces jurisdictional concepts. The Bankruptcy Code provides federal question jurisdiction for most forms of estate administration. A valid chapter 11 bankruptcy case naturally invokes the core jurisdiction of this Court. That being said, nothing in the Bankruptcy Code, the United States Code, the U.S. Constitution, or principles of equity allow this Court to stray beyond the confines of Article I jurisdiction. Even the expansive breadth of *in rem* jurisdiction over estate assets does not expand what state law must first provide.[14]

To say it more plainly, by Debtors' election to forego posting a supersedeas bond and yet pursue an appeal of the Idaho Judgment and Amended Idaho Judgment,

---

[13] *Butner v. U.S.*, 440 U.S. 48, 54 (1979); *In re R&J Pizza Corp.*, 2014 WL 12973408, at *2 (Bankr. E.D.N.Y. Oct. 14, 2014) ("[T]he provisions of the Bankruptcy Code that govern "property of the estate" are borrowing statutes, i.e., the Bankruptcy Code does not create any property rights; rather, it protects legal or equitable interest [sic] already in existence.").

[14] *See id.* (debtor's property interests are created and defined by state law).

10

Debtors left themselves subject to the directives of the Idaho state court regarding enforcement of the Amended Idaho Judgment. Upon compliance with such directives and conclusion of the Idaho Appeal, this Court will then be able to ascertain what remains as property of the estate, as determined under applicable state law.

Section 541 of the Bankruptcy Code describes property of the estate. The estate includes intangible property, which encompasses causes of action held by debtors. The Bankruptcy Code likewise provides a statutory basis for certain causes of action which can be asserted in an adversary proceeding. Because this Court previously made clear in connection with the Court's orders granting stay relief that these Bankruptcy Cases could not serve as a supersedeas bond, the estate property that Debtors will be left to administer in these Bankruptcy Cases is whatever is remaining under applicable state law, after the Idaho state courts have concluded their deliberations. If applicable state law results in the elimination of certain causes of action that Debtors argue they now possess, then those causes of action will not constitute property of the estate and will not be able to be pursued in this Court or any other court.

G. Conclusion

Without final resolution of the Idaho Appeal, the Court determines that dismissal of the Bankruptcy Cases is premature. Should Debtors prevail in overturning the Amended Idaho Judgment (and thus the findings and conclusions stated in the Idaho Judgment), the implications could be far-reaching. Debtors could potentially possess additional, as-yet unasserted claims under applicable state law

11

and the Bankruptcy Code. And, of equal importance to this Court's determination of the issues ultimately raised by Debtors in the Adversary Proceeding, this Court would no longer be bound by the existing factual determinations of the Idaho Judgment.

On the other hand, conclusion of the Idaho Appeal may mean that Debtors' estate has insufficient assets to reorganize. In that event, perhaps chapter 7 might be a more appropriate form of relief. But we are not there yet. Once the Idaho Appeal has reached its natural conclusion, the Court will fully assess the scope of Debtors' tangible and intangible property, including causes of action. Until that time, dismissal is premature.

The Court, having considered the Motion and the entire record of all applicable cases, hereby **ORDERS** that the Motion is **DENIED** without prejudice against refiling at a later date.

###

Copy to:

Paul Singerman, Esq.
*(Attorney Singerman shall immediately serve this Order upon all interested parties in compliance with all applicable rules).*