

**ORDERED in the Southern District of Florida on March 9, 2023.**

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| AUBSP Ownerco 8, LLC, | Case No. 22-18613-MAM |
| AUBSP Ownerco 9, LLC, | Case No. 22-18614-MAM |
| | (Jointly Administered under |
| Debtors. | Case No. 22-18613-MAM) |
| _____ / | |

### ORDER DENYING EMERGENCY MOTION TO CLARIFY STAY RELIEF ORDERS (ECF NO. 139 IN CASE NO. 22-18613)

Debtors AUBSP Ownerco 8, LLC and AUBSP Ownerco 9, LLC (collectively, "Debtors") filed their bankruptcy cases (as jointly administered, the "Bankruptcy Cases") on November 4, 2022 (the "Petition Date"). Approximately 3 weeks later, 487 Morris Associates LLC and TJV Associates LLC (collectively, "Creditors") filed a motion to dismiss Debtors' Bankruptcy Cases (ECF No. 32) (the "Motion to Dismiss")

and a motion seeking relief from the automatic stay ("<u>Creditors' Stay Relief Motion</u>").[1] Two days later, Debtors filed their own motion for relief from stay ("<u>Debtors' Stay Relief Motion</u>") to conclude their appeal (the "<u>Idaho Appeal</u>") of an Idaho state court judgment (the "<u>Idaho Judgment</u>").[2] Debtors elected not to post a supersedeas bond or seek a stay pending appeal of the Idaho Judgment (as later amended, the "<u>Amended Idaho Judgment</u>").[3]

The Court conducted a comprehensive hearing (the "<u>Dismissal Hearing</u>") on the Motion to Dismiss on January 27, 2023. At the Dismissal Hearing, the Court began by issuing an oral ruling granting stay relief to Debtors and Creditors. In its oral ruling, the Court stated:

> Stay relief will be granted based upon the plain language of the Idaho Judgment. This court is not a substitute for the Idaho appellate court, and I do not require any further evidence beyond what is presently in the record to determine that stay relief is appropriate to effectuate the terms of the Idaho Judgment or, alternatively, to let an appeal proceed in that forum. My decision is straightforward and based upon an existing valid state court judgment, an appeal of that judgment, a requirement by the State Court that a supersedeas bond be posted, the Debtors' decision not to post that bond and instead to file [their bankruptcy cases], as well as the entire record of these proceedings.
>
> As a general rule, a chapter 11 bankruptcy filing cannot be used by a debtor to avoid the requirement of posting a supersedeas bond in a non-

---

[1] For ease of reference, the Court will refer to documents by ECF number in Case No. 22-18613. Debtors filed a motion to jointly administer Debtors' cases (ECF No. 7), which the Court granted by Order entered on November 17, 2022 (ECF No. 18).

[2] The term "Idaho Judgment" refers to the 35-page *Memorandum Decision and Order on Motions for Summary Judgment and to Strike* entered by the District Court of the Fourth Judicial District of the State of Idaho I, in and for the County of Ada, in Case No. CV01-21-07907. *See* ECF No. 32-1 (Exhibit A).

[3] The term "Amended Idaho Judgment" refers to a 7-page document providing for specific performance, declaratory judgment, and quieting title as to the real properties described therein. ECF No. 32, pdf p. 276 (also located at ECF No. 95-7, pdf p. 2). This document amends the Idaho Judgment.

bankruptcy litigation to stay the effect of a judgment in that proceeding. *In re Karum Group, Inc.,* 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986); *In re Harvey*, 101 B.R. 250, 252 (Bankr. D. Nev. 1989).

The filing of the Bankruptcy Cases temporarily delayed state court proceedings. For the reasons stated on the record at the Dismissal Hearing, the Court ruled on the issue of stay relief as expeditiously as possible to ensure that all parties promptly secured the relief that they sought—namely, the ability to finalize the state court proceedings and ensure timely administration of Debtors' bankruptcy estates.[4]

### A. Stay Relief Orders

The Court entered two orders granting stay relief on February 2, 2023. Consistent with local practice in this district, counsel prepared and circulated draft versions of the proposed orders granting stay relief.[5] The orders entered as ECF Numbers 107 ("Creditors' Order") and 108 ("Debtors' Order", and collectively with Creditors' Order, the "Stay Relief Orders") were succinct. Each granted stay relief for the reasons stated on the record.

Paragraph 2 of Debtors' Order stated that "[e]ffective immediately, the automatic stay provisions of 11 U.S.C. § 362 are lifted with respect to the Appeal to permit it to proceed in Idaho." ECF No. 108 (footnote omitted). Creditors' Order provided a bit more detail:

---

[4] See ECF Nos. 107 and 108.

[5] Counsel for all interested parties typically review and comment upon the language in a proposed order until all parties agree that the order accurately reflects the Court's ruling at a prior hearing. After that process, the attorney tasked with uploading the order submits the proposed order via CM/ECF for the Court's consideration. Counsel in this matter represented that they followed this practice.

> The automatic stay under 11 U.S.C. § 362 is lifted with respect to the Idaho Litigation and the pending appeal of the Judgment in the Idaho Supreme Court and all related proceedings, to permit all parties in interest to seek relief related to the Idaho Litigation and to allow the Courts in Idaho to issue orders and address matters therein as they deem appropriate, including any actions to effectuate, enforce, or realize upon the Judgment or any related orders.

ECF No. 107, ¶ 2.

B. <u>Emergency Motion</u>

Despite the brevity of the Stay Relief Orders (and having agreed to the language prior to entry), Debtors now contend that the Stay Relief Orders are vague. On March 6, 2023, more than a month after entry of the Stay Relief Orders, Debtors filed an emergency motion (ECF No. 139) (the "<u>Emergency Motion</u>") seeking "clarification" of both orders.

The next day, March 7, 2023, the Court held a hearing (the "<u>Emergency Hearing</u>") on the Emergency Motion. At the Emergency Hearing, the Court repeated its prior admonition that a chapter 11 bankruptcy filing cannot be used by a debtor to avoid the requirement of posting a supersedeas bond in a non-bankruptcy litigation to stay the effect of a judgment in that proceeding.[6] With that statement, the Court then invited and considered extensive oral argument from Debtors' counsel regarding the relief sought in the Emergency Motion, along with oral argument in response from Creditors' counsel.

---

[6] *In re Karum Group, Inc.*, 66 B.R. 436, 439 (Bankr. W.D. Wash. 1986); *In re Harvey*, 101 B.R. 250, 252 (Bankr. D. Nev. 1989).

C. <u>Debtors' Arguments</u>

Debtors' arguments are, in a nutshell, that they should not be required to yield causes of action that were never contemplated at the time of entry of the Idaho Amended Judgment. Their concerns essentially boil down to the perspective that because no bankruptcy case existed until the Petition Date, it would be improper and inequitable for Debtors to be forced by any court (this Court or the Idaho state court) to sign transfer documents requiring them to invalidate causes of action uniquely assertible in the context of these Bankruptcy Cases. For that reason, Debtors seek "clarification" that entry of the Stay Relief Orders does not deprive them of the ability to pursue bankruptcy-related causes of action.

D. <u>Creditors' Response</u>

Creditors' response (ECF No. 144) (the "<u>Response</u>") characterizes the Emergency Motion as procedurally improper and an untimely request for reconsideration of the Stay Relief Orders. At the Emergency Hearing, Creditors emphasized Debtors' failure to comply with Rule 60(b),[7] citing to, *inter alia*, *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). From Creditors' standpoint, no "exceptional circumstances" such as unforeseen circumstances or changes in the law exist to support the "extraordinary remedy" of reimposition of the automatic stay, more than 30 days after entry of the Stay Relief Orders. *See* 722 F.2d at 680 (describing appropriate application of Rule 60(b)(6)).

---

[7] Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60(b). For ease of reference, the Court typically uses the terms "Bankruptcy Rule" and "Rule" to distinguish between the two sets of rules.

As part of oral argument, Creditors' counsel accurately described the following timeline of events, which has been slightly clarified by reference to this Court's docket:

- August 8, 2022: Entry of Amended Idaho Judgment
- September 9, 2022: First enforcement motion filed (Idaho state court)
- November 4, 2022: Petition Date of Debtors' Bankruptcy Cases
- November 7, 2022: Second enforcement motion filed (Idaho state court)
- November 28, 2022: Debtors stay relief motion filed (ECF No. 33)
- December 8, 2022: Creditors' stay relief motion filed (ECF No. 50)
- January 20, 2023: Debtors commenced Adversary Proceeding 23-01013
- January 27, 2023: Oral ruling upon stay relief (issued at commencement of the Dismissal Hearing)
- February 2, 2023: Entry of the Stay Relief Orders
- February 3, 2023: Creditors resume enforcement of Amended Final Judgment (pending resolution of Idaho Appeal)

## ANALYSIS

A. <u>Stay Relief</u>

Debtors first sought stay relief to pursue the Idaho Appeal approximately 60 days prior to the Dismissal Hearing. Creditors filed their motion for stay relief 10 days later. Within the 50-day period between the filing of Creditors' Stay Relief Motion and this Court's ruling on January 27, 2023, Debtors never filed a response in opposition to Creditors' Stay Relief Motion. Instead, Debtors continued to advance the position that their reorganization prospects were (and still are) genuine and that the Bankruptcy Cases should proceed in tandem with the resolution of the Idaho Appeal. To quote Debtors directly, Debtors maintained the stance that because "Debtors [held] only bare legal title to the properties," they required "relief from the

6

automatic stay to conclude the appeal to determine the Debtors' remaining rights as to the properties wrongfully forfeited." ECF No. 33, p. 1 (Preliminary Statement).

In the context of Rule 60(b), little needs to be said that Creditors' counsel has not already voiced. No unforeseen circumstances or changes in the law have occurred nor was Debtors' counsel able to identify any such exceptional circumstances. This is a classic case of too little, too late. The Court granted stay relief, as both parties requested, and entered orders in substantially the same form that counsel to all parties reviewed and approved. No more need be said on that point.

B. <u>Debtors' Causes of Action</u>

As to Debtors' concerns regarding their causes of action, the Court will briefly remind the parties of the ruling set forth in the Court's order denying Creditors' Motion to Dismiss (the "<u>Dismissal Order</u>").[8] To make a complex decision simple, the Court will summarize plainly: you cannot yield what you do not have. And, conversely, whatever rights state law provides is what you hold.

As the Court's Dismissal Order emphasizes, property rights are determined and created by state law.[9] Nothing in the Dismissal Order or this Order should be construed as a "taking away" of state law property rights. Based on Debtors' decision not to post a supersedeas bond to stay the enforcement of the Amended Idaho Judgment pending the appeal of that judgment, and not to seek a timely clarification

---

[8] The dismissal order is entered contemporaneously with this order.

[9] *Butner v. U.S.,* 440 U.S. 48, 54 (1979); *In re R&J Pizza Corp.,* 2014 WL 12973408, at *2 (Bankr. E.D.N.Y. Oct. 14, 2014) ("[T]he provisions of the Bankruptcy Code that govern "property of the estate" are borrowing statutes, i.e., the Bankruptcy Code does not create any property rights; rather, it protects legal or equitable interest already in existence.").

or reconsideration of the Stay Relief Orders, Debtors are now obligated to comply with the consequences of those decisions. An obvious consequence, and one that Debtors articulated as the basis of the Motion, is Debtors' potential inability to pursue certain causes of action to the extent that execution and delivery of documents described in the Insurance Covenants Agreement invalidates or otherwise impacts those claims. But, again, since these Bankruptcy Cases cannot serve as a supersedeas bond to stay the enforcement of the Amended Idaho Judgment, Debtors will have to live with the impact of the Transfer Documents on their claims, as determined under applicable state law.

Although this Court may certainly determine whether an asset constitutes property of Debtors' estates, it cannot and will not expand its jurisdictional reach to instruct the Idaho state court on how it should interpret its own judgments under applicable state law. And, of course, once the state court determines the appropriate interpretation (and finality) of the Amended Idaho Judgment, Debtors may assert all available causes of action, including those arising under the Bankruptcy Code. Until such time, any determination made by this Court regarding the merits of Debtors' causes of action under the Bankruptcy Code and applicable federal and state law would be premature.

## CONCLUSION

The Court granted Debtors' and Creditors' request for stay relief. The Stay Relief Orders are final and unambiguous. The Court, having considered the Emergency Motion, oral argument from counsel, and the entire record of all

applicable cases, **ORDERS** that the Emergency Motion is **DENIED**.

###

Copy to:

Scott Underwood, Esq.
*(Attorney Underwood shall immediately serve this Order upon all interested parties in compliance with all applicable rules).*