UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22-18613-MAM |
| AUBSP OWNERCO 8, LLC, | ) | Case No. 22-18614-MAM |
| AUBSP OWNERCO 9, LLC, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**MOTION BY TJV PARTIES PURSUANT TO RULES 9023 AND 9024 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS [ECF NO. 147] BASED ON
NEW INFORMATION AND DEVELOPMENTS**

TJV Associates LLC and 487 Morris Associates LLC (together the "TJV Parties"),

pursuant to Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure and Rules 59(e)

and 60(b) of the Federal Rules of Civil Procedure as incorporated therein, submit this motion (the

"Motion") seeking reconsideration of the Court's *Order Denying Motion to Dismiss* [ECF No.

147] entered March 9, 2023 (the "Dismissal Order"), which denied the TJV Parties' motion to

dismiss (the "Motion to Dismiss") the bankruptcy cases (the "Bankruptcy Cases") commenced by

above-referenced debtors (the "Debtors"), and respectfully state as follows:

**INTRODUCTION AND REQUESTED RELIEF**

The TJV Parties are very grateful for the Court's time and effort in presiding over these

contentious matters and in preparing the Dismissal Order, which offers a thoughtful and practical

approach to addressing the pervasive nature of the Idaho litigation in the context of these

Bankruptcy Cases.  Based on new developments that have occurred after entry of the Dismissal

Order, however, and in light of certain practical and legal considerations that were not previously

the subject of briefing or argument by the parties, the TJV Parties believe that reconsideration of the Dismissal Order is warranted.

In the Dismissal Order, the Court concluded that "the Debtor's reorganization prospects (and resultant good faith or lack thereof in pursuing chapter 11 relief) will not be known until after resolution of the Idaho Appeal." Dismissal Order, p. 8. Accordingly, the Court denied the TJV Parties' Motion to Dismiss without prejudice, finding that, "[w]ithout final resolution of the Idaho Appeal, the Court determines that dismissal of the Bankruptcy Cases is premature." *Id.*, p. 11. The Court further observed that, "[i]f applicable state law results in the elimination of certain causes of action that Debtors argue they now possess, then those causes of action will not constitute property of the estate and will not be able to be pursued in this Court or any other court." *Id.* Through these and other findings in the Dismissal Order, the TJV Parties understand the Court to have ruled that, not only is dismissal premature at this time, but any further substantive activity in the Bankruptcy Cases—including advancement of litigation in the pending adversary proceeding and consideration of any proposed chapter 11 plan—is premature until the Idaho judgment becomes final and non-appealable.

As the Court is fully aware, these Bankruptcy Cases represent one piece of a larger litigation puzzle involving numerous courts, including state courts in Idaho, Delaware, and Florida, which are simultaneously presiding over overlapping and related issues concerning the Debtors' interests in the Idaho properties. Likely due, at least in part, to these evolving real-time developments in multiple ongoing litigations and in greater deference to the state court than contemplated by the parties, the rationale on which the Court decided the Motion to Dismiss—that any determination of bad faith is premature until final resolution of the Idaho appeals—was never raised or argued by the Debtors or briefed by the parties. Accordingly, the parties were unable to

address the significant legal and practical considerations associated with the Court's ruling prior to entry of the Dismissal Order.  The TJV Parties respectfully believe that, with the benefit of briefing regarding these considerations, the Court may have reached a different conclusion in the Dismissal Order, particularly upon consideration of the Idaho litigation timeline that was never presented to the Court, as well as relevant legal authority regarding these issues that was outside the scope of the issues addressed by the parties.  In sum, the TJV Parties submit that awaiting resolution of the Idaho appeals to determine the Debtors' reorganizational prospects—which may require *three years* of delay before any judgment in the Debtors' favor could become final—is neither practicable nor warranted under applicable law.

Furthermore, the TJV Parties submit that *material new developments* that have occurred *after* the Court's entry of the Dismissal Order—developments that the Court expressly contemplated in its Dismissal Order would potentially change the landscape around its determination of bad faith—further warrant reconsideration of the Dismissal Order.  Specifically, the Idaho trial court has now required the Debtors to execute and deliver the Transfer Documents in the forms required by the Insured Covenants Agreements and as requested by the TJV Parties, including general warranty deeds and unqualified general releases by the Debtors.  The Debtors have now executed these unqualified Transfer Documents, which are fully effective.  In briefing to this Court, the Debtors have previously acknowledged that execution of these unqualified Transfer Documents, if required by the Idaho court, would "eviscerate" (in the words of the Debtors) the Debtors' claims and rights that form the entire premise of these Bankruptcy Cases. Your Honor likewise recognized that such relief, if granted in Idaho, may foreclose the Debtors' causes of action forming the basis for the Debtors' putative reorganization.  Now that the Idaho

court has granted this relief, the Debtors' Bankruptcy Cases have no leg to stand on and serve no discernable purpose.

Accordingly, the TJV Parties ask the Court to reconsider or vacate the Dismissal Order and dismiss the Bankruptcy Cases without prejudice to the Debtors' ability to refile at a later date if a material change in the Debtors' circumstances subsequently justifies the protections of Chapter 11 of the Bankruptcy Code.

## LEGAL STANDARD

A motion under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure, will be granted if the movant establishes at least one of the following: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151-52 (11th Cir. 2011). A motion under Rule 60(b), made applicable by Rule 9024 of the Federal Rule of Bankruptcy Procedure, will be granted if the movant establishes (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, (3) fraud, (4) the judgment is void, (5) the judgment has been satisfied, released, or discharged, or (6) any other reason justifying relief. *See* Fed. R. Civ. P. 60(b)(1)-(6).

Additionally, courts have acknowledged the "general principle [that] a bankruptcy court has equitable power to correct, modify, or vacate its own interlocutory orders." *Williams v. Brown (In re Air Safety Int'l, LLC)*, 308 B.R. 90, 95 (Bankr. S.D. Fla. 2003) (citing *In re Coggin*, 30 F.3d 1443, 1450 (11th Cir. 1994), *overruled on other grounds by Kontrick v. Ryan*, 540 U.S. 443, 124 (2004)); *see also Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995) (noting that district court has "plenary power" over interlocutory orders and may reconsider, revise, alter or amend such orders any time prior to judgment). With respect to reconsideration of interlocutory orders such as the

Dismissal Order, certain district courts have also looked to Rule 54(b) of the Federal Rules of Civil Procedure, though this distinction is not material here as the factors set forth in Rule 60(b) are likewise applied to a Rule 54(b) motion to reconsider. *See Herman v. Hartford Life & Acc. Ins. Co.*, 508 F. App'x 923, n.1 (11th Cir. Feb. 13, 2013) (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) as reviewing a district court's grant of a motion to reconsider denial of a motion for summary judgment as if it were a Rule 60(b) motion).

In all events, this Court has substantial discretion in applying the foregoing standards upon a request for reconsideration. *See In re Manger*, 2022 Bankr. LEXIS 79, *8-9, 2022 WL 127434, Case No. 20-13066-MAM (Bankr. S.D. Fla. Jan. 13, 2022). In particular, "a motion for reconsideration is appropriate where the 'Court has . . . has made a decision outside of the adversarial issues presented to the Court by the parties. . . .'" *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (*quoting Z. K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Likewise, whether under Rule 59(e), 60(b), or 54(b), material new developments occurring after entry of the Court's Dismissal Order can justify reconsideration.

## **ARGUMENT**

### A.    **The Parties Did Not Raise or Address the Issue of Whether a Bad Faith Finding Is Premature until Conclusion of Idaho Litigation and Appeals.**

The Debtors asserted many theories as to why the Motion to Dismiss should be denied, including (i) the TJV Parties' alleged bad faith requires such result, (ii) the TJV Parties lack standing as litigation targets to seek dismissal; (iii) "unusual circumstances" warrant continuation of the Bankruptcy Cases, and (iv) the Debtors' pursuit of claims for the sole benefit of Mr. Sabella (rather than any material benefit to any creditor) is sufficient to justify continuation of chapter 11 proceedings, even in the absence of any traditionally recognized bankruptcy objective. The

Debtors, however, did not assert in briefing or at oral argument that the Court should await resolution of the Idaho litigation and appeals before the Court could evaluate the Debtors' causes of action and reorganizational prospects for purposes of evaluating the Debtors' good or bad faith. Accordingly, none of the parties had notice of this potential rationale and none of the parties briefed for the Court's benefit the legal and practical consequences of such determination.

While the Court's rationale in the Dismissal Order seems a practical solution to addressing the pervasive nature of the Idaho litigation, the TJV Parties submit that further briefing on this issue may have caused this Court to conclude that awaiting resolution of the Idaho litigation and appeals is not workable given the likely duration of such process. Moreover, considering authority from the Eleventh Circuit holding that a bankruptcy case should be dismissed if evidence of bad faith is present as of the petition date, *even if the court cannot at that time determine whether the debtor may be able to successfully confirm a chapter 11 plan*, the TJV Parties believe the Court may have concluded upon consideration of briefing from the parties that dismissal of the Bankruptcy Cases is not premature after all. *See Musselman v. Jasgur (In re Seminole Walls & Ceilings Corp.)*, 2010 Bankr. LEXIS 30, *3-4, 2010 WL 148239 (Bankr. M.D. Fla. Jan. 7, 2010) (granting reconsideration where parties were not given adequate notice of the need to formally brief an issue).

**B.**     **Description of Idaho Litigation Timeline.**

Considering the extraordinary length of time that may be necessary to obtain a final judgment in Idaho after conclusion of all appeals, it is not practicable to stay or otherwise delay resolution of the Debtors' Bankruptcy Cases, including any finding of good or bad faith, until the Idaho litigation is fully resolved.

While the Idaho litigation timeline is largely outside of the TJV Parties' control, the TJV Parties estimate that the Debtors' pending appeal of the Idaho trial court's summary judgment decision—if not dismissed earlier—will likely result in a decision by the Idaho Supreme Court in approximately 10-14 months from today. If the Idaho Supreme Court affirms the trial court's ruling in full, the TJV Parties should have a final and non-appealable judgment in their favor at that time. The TJV Parties understand, based on the Dismissal Order, that if the Idaho Supreme Court affirms the trial court's judgment in favor of the TJV Parties, this Court may conclude that the Debtors lack sufficient assets to pursue a chapter 11 case, and thus this Court may be inclined to dismiss the Bankruptcy Cases at that time. Any such determination likely remains 10-14 months away.

If, on the other hand, the Idaho Supreme Court does *not* affirm the judgment when it decides the pending appeal in 10-14 months, the Idaho Supreme Court likely would not simply reverse the trial court's summary judgment order and award judgment in favor of the Debtors. The Debtors did not seek summary judgment on all matters in a way that could dispose of the underlying case in the context of the pending appeal, thus leaving numerous issues that would likely remain unresolved in the event the Idaho Supreme Court reverses the trial court's decision granting summary judgment in favor of the TJV Parties. Accordingly, even if the Debtors prevail on the currently pending appeal when a decision is delivered in 10-14 months, the Idaho Supreme Court would likely remand the matter back to the trial court for further proceedings, including trial, which would require an additional 2-4 months (or more) to complete. Depending on the outcome of that trial on remand, the Debtors or the TJV Parties may *further* appeal the trial court's subsequent judgment, meaning the parties will be required to wait longer—perhaps *an additional* 12 to 16 months for a ruling on that appeal. In other words, waiting until the Idaho courts could

decide on a final basis in favor of the Debtors would likely require a delay of 24-34 months from today.  The TJV Parties understand the Court's Dismissal Order to suggest that allowing the Debtors to continue in chapter 11 may only be justified if the Debtors prevail in some meaningful way in the Idaho litigation, but that determination likely remains 24-34 months away.

The Dismissal Order appears to contemplate a delay or stay of all bankruptcy proceedings until the Idaho courts fully resolve the appeals on a final basis, but as set forth herein, *a final resolution in the Idaho litigation may take up to three years*, depending on how the Idaho courts decide these issues.  In the meantime, based on the assets, liabilities, and business activities of the Debtors that exist presently and that existed as of the petition date, the Debtors' Bankruptcy Cases—whether stayed or not—will serve *no* reorganizational purpose.  Considering these Debtors will have no assets, no material liabilities, no employees, no ongoing business activity, and no means of producing income throughout that entire multi-year timeline, there is simply no reason for these Bankruptcy Cases to remain pending—whether stayed or not—while awaiting such final resolution of the litigation in Idaho.[1]  Instead of granting this possible multi-year delay or stay pending resolution of multiple possible Idaho appeals, upon taking into account the likely litigation timeline, which was not previously addressed by the parties, the Court should have dismissed these Bankruptcy Cases without prejudice.  Indeed, requiring that the Bankruptcy Cases remain pending in abeyance until such final conclusion effectively grants the Debtors the one form of relief the

---

[1] After entry of the Dismissal Order, the Debtors filed monthly operating reports ("MORs") for the period ending February 28, 2023.  *See* ECF No. 157 and 158.  Like nearly all of the MORs that preceded them, these February MORs showed zero business activity during the month:  no receipts, no disbursements, no employees, and no other reportable transactions.  *Id.*  After entry of the Dismissal Order, the Debtors also filed a fee application for the Debtors' counsel reflecting the incurrence of over $400,000 in professional fees from the petition date through February 28, 2023.  *See* ECF No. 159.  As the Dismissal Order observed, the Debtors have only a single non-insider creditor, Stoel Rives, which is allegedly owed approximately $50,000—a small fraction of the professional fees incurred to date.  Dismissal Order, p. 3 n. 5.  Prolonged continuation of these Bankruptcy Cases will involve an extraordinary destruction of value without any meaningful benefit for the sole alleged non-insider creditor of the Debtors.

Court has steadfastly refused to give the Debtors from the outset:  a stay of proceedings pending resolution of the Idaho appeal.[2]

## C.  Legal Authority Regarding Timing of Court's Determination of Debtors' Reorganizational Prospects.

In the Dismissal Order, the Court found that the reorganizational prospects of the Debtors cannot be fully determined until the Idaho litigation and appeals are resolved, and thus the Court cannot yet evaluate whether the petitions were filed in good faith or bad.  Dismissal Order, p. 8 ("The Court will explain why the Debtor's reorganization prospects (and resultant good faith or lack thereof in pursuing chapter 11 relief) will not be known until after resolution of the Idaho Appeal.").  The TJV Parties believe that—with the benefit of legal briefing on this issue to address relevant Eleventh Circuit law—the Court may be disinclined to find that delay of its determination as to the good or bad faith of the Debtors' petition is necessary or warranted.

The issue at the heart of the Motion to Dismiss was whether the Debtors filed their bankruptcy petitions in bad faith, which implicates the question of, but should not be controlled by, the Debtors' prospect of confirming a chapter 11 plan in these Bankruptcy Cases.  In finding the inquiry as to a debtor's bad faith to be distinct from the inquiry into the debtor's prospect of a successful reorganization, the Eleventh Circuit addressed in the *Phoenix Piccadilly* case whether a bankruptcy court should delay its determination of the debtor's good or bad faith until the

---

[2] Holding the cases in abeyance for an extended duration while awaiting resolution of the Idaho appeals imposes several substantial burdens on the TJV Parties.  As an initial matter, by allowing the Debtors to hold their fraudulent transfer complaint in abeyance instead of dismissing the complaint now, the Debtors effectively receive a free tolling of the two-year lookback period under 11 U.S.C. § 548, as that period may otherwise run prior to a resolution of the Idaho appeals if the Debtors were required to re-file later.  Other bankruptcy-specific deadlines will also create uncertainties and complications if the Bankruptcy Cases remain open for an extended period of time, including deadlines regarding removal of litigation (potentially allowing the Debtors to remove and stay other pending lawsuits without consequence), the plan exclusivity period that is intended to be limited in duration, and deadlines for rejection of real property leases (including, arguably, the Rite Aid leases that were (improperly) scheduled by the Debtors as their assets.  An extended stay will also necessarily impose significant burdens on this Court, as the Court will undoubtedly be asked to address numerous contentious disputes that will inevitably arise in the meantime, all while the Debtors' ability to maintain their bankruptcy cases longer-term remains highly uncertain and the benefit to the Debtor's sole alleged creditor remains nil.

bankruptcy court evaluates the debtor's reorganizational prospects in connection with potential

confirmation of a plan.  The Eleventh Circuit explicitly rejected this approach:

> Because the bankruptcy court found that a bad faith filing had occurred, it properly did not change the consequences of that finding simply because of the debtor's possible equity in the property or potential for successful reorganization. ***We reject the debtor's argument that the bankruptcy court cannot ever dismiss a case for bad faith if there is equity in the property because the presence of equity indicates the potential for a successful reorganization***. Rather, as this Court stated in *In re Natural Land*:
>
>> the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.
>
> 825 F.2d at 298. ***The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith***.

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) (emphasis added).  Thus,

under *Phoenix Piccadilly*, the test is whether the petition was filed in bad faith at the outset of the

case, not whether subsequent events could theoretically demonstrate an ability to confirm a plan.

In the *Natural Land* case, cited above by *Phoenix Piccadilly*, the bankruptcy court

dismissed a bankruptcy case where the debtor was a corporate shell—with no assets, employees,

or ongoing business activities—that acquired certain real property at no cost and filed a bankruptcy

petition to avoid a secured creditor's exercise of remedies.  *Natural Land*, 825 F.2d at 297.  The

debtor appealed the dismissal, asserting that it had equity in the property and may be able to

confirm a chapter 11 plan, arguing that the bankruptcy court should not have made a finding as to

bad faith until determining whether the debtor could successfully confirm a chapter 11 plan.  *Id.*

The Eleventh Circuit rejected this argument, finding "we may easily dispose of [the debtor's] claim

that the bankruptcy court should not have decided the issue of good faith until it had examined

[the debtor's] proposal for reorganization." *Id.*  Instead, the Eleventh Circuit affirmed dismissal

on the grounds that the debtor's bad faith is determined based on the circumstances around the

debtor's filing of the petition, not based on whether the debtor may be able to successfully confirm a plan based on subsequent developments. *Id.*

In the instant case, the question of Debtors' good or bad faith as of the petition date should not be postponed, only to be later determined retrospectively, *i.e.*, only after conclusion of the Idaho litigation and appeals based on a *post hoc* assessment of whether the Debtors' litigation claims are ultimately found to have merit or not. The availability of present or future assets of the estate that could possibly be utilized to achieve confirmation of a chapter 11 plan is not the sole consideration in evaluating whether a bankruptcy petition is filed in bad faith. Indeed, while the prospect of confirming a chapter 11 plan is *one* factor in evaluating whether a debtor filed its petition in bad faith, it is far from the only factor. *See Phoenix Piccadilly,* 849 F.2d at 1394 ("[T]here is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'") (citing A*lbany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984)). For that reason, the Eleventh Circuit in *Phoenix Piccadilly* and *Natural Land* affirmed dismissal of debtors' bankruptcy cases even where the debtors showed they may have sufficient equity value to confirm a chapter 11 plan at some future date.

In denying the Motion to Dismiss on the grounds that it was premature because the Court could not yet determine the Debtors' prospect of confirming a chapter 11 plan, the Court did not apply the traditional factors set forth in relevant case authority regarding whether a petition is filed in bad faith, instead focusing on the inability to accurately determine the Debtors' reorganization prospects until resolution of the Idaho litigation and appeals. But if the sole or primary factor for

12018146-1

11

determining whether the debtor filed its petition bad faith is the debtor's reorganizational prospects, then courts would always wait until plan confirmation to make a determination of whether the case was filed in bad faith.  The Eleventh Circuit in *Phoenix Piccadilly* and *Natural Land* rejected such an approach.  *See Phoenix-Piccadilly*, 849 F.2d at 1395 ("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith."); *Natural Land*, 825 F.2d at 297 ("It seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.").

Indeed, even where courts do evaluate a debtor's prospect of a successful reorganization as one factor in determining whether it filed its petition in good or bad faith, courts evaluate this prospect of reorganization based on the facts known at the time to determine whether confirmation is reasonably likely to occur *within a reasonable period of time thereafter*.  *See In re Investors Fla. Aggressive Growth Fund*, 168 B.R. 760, 770 (Bankr. N.D. Fla. 1994) ("An opportunity to reorganize does not mean an unending right to remain in Chapter 11 in order to hold creditors at bay without the ability to propose a confirmable plan *within a reasonable time*.") (emphasis added). *Cf.* 11 U.S.C. § 1112(b)(2)(A) (limiting "unusual circumstances" that avoid dismissal only to circumstances where there is a "reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time").  In considering these Debtors' reorganizational prospects as part of the broader test for determining good or bad faith, the Court should thus evaluate *now* the likelihood of the Debtors' confirmation of a chapter 11 plan *within a reasonable period of time*. Based on the Court's conclusion that confirmation of a chapter 11 plan prior to full resolution of that Idaho litigations may require the Court to intrude upon the Idaho court's appellate process and

thus cannot occur until after final resolution of the appeal(s), the answer of whether the Debtors can confirm a plan *within a reasonable period of time* is self-evident.  The answer is no, given the timeline described above.  As such, evaluating the Debtors' prospect of reorganization within a reasonable period of time does not warrant holding the Bankruptcy Cases in abeyance until confirmation becomes more imminent; rather, evaluating this factor favors dismissal of the Bankruptcy Cases given confirmation within a reasonable period of time is not possible.

The TJV Parties respectfully submit that relevant Eleventh Circuit authority on this issue—which was not previously briefed or argued—warrants dismissal of the Bankruptcy Cases.

### D.    Finding Dismissal to Be Premature Due to Pervasive Prepetition Litigation Flips the Applicable Test.

Another key factor courts often evaluate in assessing bad faith is whether the bankruptcy filing is being used primarily to gain an advantage in a two-party litigation dispute.  *See, e.g.*, *In re Moog*, 159 B.R. 357, 361 (Bankr. S.D. Fla. 1993) ("[A]s a general rule, if the timing of the filing is such that the court concludes that the primary, if not sole purpose, of the filing was a litigation tactic, the petition may be dismissed as not being in good faith.") (describing approvingly the standard set out *In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988)).  Accordingly, bankruptcy courts routinely dismiss bankruptcy cases as bad filings where the petition was filed in connection with a two-party dispute regarding state law.  *See In re Outta Control Sportfishing, Inc.*, 642 B.R. 180, 185 (Bankr. S.D. Fla. 2022) ("[W]here the debtor 'faces no threat from any of its other purported creditors, [its] financial problems are a two-party dispute suitable for resolution' outside of the bankruptcy court, which supports a finding of bad faith.") (*quoting In re State St. Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003), aff'd, 356 F.3d 1345 (11th Cir. 2004)).

Another key principle that courts consider in evaluating bad faith—a factor this Court has reiterated frequently—is that a debtor cannot use a bankruptcy filing to serve in lieu of posting a

bond in state court to obtain a stay pending appeal. Again, efforts by debtors to do so have routinely resulted in dismissal of the bankruptcy case. *See Outta Control Sportfishing*, 305 B.R. at 186 ("Essentially, the Debtor filed this bankruptcy to circumvent the procedural hurdles in District Court that were not to its liking, such as paying a bond. In the context of a two-party dispute, this is an inappropriate use of the bankruptcy court and supports a finding of bad faith under the specific facts of this case.").

Here, the Court has taken these litigation-related factors, which are undeniably present in these Bankruptcy Cases and which strongly support dismissal of the Debtors' petitions under applicable case authority, and has deemed them factors that support the Court's denial of the Motion to Dismiss until the litigation is resolved. The existence and pervasiveness of state court litigation, however, such that a bankruptcy case is effectively an extension of a two-party state court dispute, generally warrants dismissal of the Bankruptcy Cases, not a finding that dismissal is premature until the litigation is resolved. Here, the Debtors filed these cases to avoid posting an appeal bond, and the only stated rationale by the Debtors for pursuing and achieving confirmation of a chapter 11 plan is through prosecution of litigation that would expressly unwind the effect of the Idaho state court judgment. There is no reason to await the conclusion of the Idaho litigation to conclude that filing a bankruptcy petition to avoid posting a supersedeas bond and for the sole stated purpose of avoiding a prepetition state court judgment for the benefit of the Debtor's equity holder constitutes bad faith. This especially true here, where the debtors have <u>no tangible assets</u>, <u>no meaningful liabilities</u>, <u>no employees</u>, <u>no going-concern operations</u>, and <u>no means of generating any income</u>. The U.S. Supreme Court has identified "preserving going concerns and maximizing property available to satisfy creditors" as "***the*** two recognized policies underlying Chapter 11." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 453 (1999)

(emphasis added).  Continuation of these Bankruptcy Cases serves neither of these two stated policies, and the TJV Parties do not believe relevant authority in this jurisdiction is consistent with the proposition that a currently meritless case should be put on "hold" to see whether—some years hence—facts may change in a way that could possibly support an appropriate Chapter 11 filing. In these circumstances, the TJV Parties respectfully submit that the Court's finding in the Dismissal Order that the pervasive nature of the two-party state court litigation *prevents* the Court from ruling on the Motion to Dismiss is not consistent with applicable case authority.

### E.    Subsequent Developments Have Already Eliminated the Debtors' Theory of these Bankruptcy Cases, thus Separately Warranting Reconsideration.

In the *Debtors' Emergency Motion to Clarify Stay Relief Orders to Avoid TJV Associates, LLC and 487 Morris Associates, LLC's Attempts to Eviscerate Debtors' Appellate Rights and Bankruptcy Claims* filed March 6, 2023 [ECF No. 139] ("Debtors' Emergency Stay Motion"), the Debtors asked this Court to enjoin the Idaho trial court from ruling on the TJV Parties' then-pending motion to enforce the Idaho judgment, where the TJV Parties were asking the Idaho court to order the Debtors to execute the Transfer Documents.  As the very title of Debtors' Emergency Stay Motion confirmed, the Debtors recognized that execution of the Transfer Documents in the unqualified forms required by the Insured Covenants Agreement and provided by the TJV Parties would "eviscerate Debtors' appellate rights and bankruptcy claims."  That is the precise language the Debtors included in their own title for their Emergency Stay Motion.  In body of the Debtors' Emergency Stay Motion, the Debtors further acknowledge that: "As TJV and Morris are aware, ***each of the provisions above they seek to include in their transfer documents would eliminate the Debtors' fraudulent transfer claims, their appellate rights, and thus very purpose of this case without the benefit of argument before this Court*." Debtors' Emergency Stay Motion, ¶ 19 (emphasis added).

In denying the Debtors' Emergency Stay Motion [ECF No. 139] (the "<u>Stay Clarification Order</u>"), the Court acknowledged that the Debtors' articulated risk of losing the purpose of their bankruptcy cases was a legitimate one based on the Idaho court's prospective ruling, finding that one "obvious consequence, and one that Debtors articulated as the basis of the [Debtors' Emergency Stay] Motion, is Debtors' potential inability to pursue certain causes of action to the extent that execution and delivery of documents described in the Insured Covenants Agreement invalidates or otherwise impacts those claims." Stay Clarification Order, p. 8. The Court's view was further highlighted in the Dismissal Order, which finds that "[i]f applicable state law results in the elimination of certain causes of action that Debtors argue they now possess, then those causes of action will not constitute property of the estate and will not be able to be pursued in this Court or any other court." Dismissal Order, p. 11.

On March 15, 2023, less than a week after this Court's entry of the Dismissal Order, the Idaho court made its ruling on the matter. Just as the Debtors feared, and just as this Court anticipated may happen, the Idaho court entered its order granting the TJV Parties' motion to enforce the judgment in Idaho (the "<u>Idaho Enforcement Order</u>"). A copy of the Idaho Enforcement Order is attached hereto as <u>Exhibit A</u>. The Idaho Enforcement Order overruled the Debtors' objection, which asked the Idaho court to modify the form of the Transfer Documents to include certain qualifications that would preserve the Debtors' various causes of action, including their fraudulent transfer action asserted in these Bankruptcy Cases. Notably, consistent with this Court's Stay Clarification Order that rejected the Debtors' untimely attempts to challenge the substance of the required Transfer Documents, the Idaho court similarly found the Debtors failed to timely assert any challenge the substance of the Transfer Documents prior to judgment, and any such challenge is now barred by *res judicata*. Idaho Enforcement Order, pp. 5-7. Thus rejecting

the Debtors' requested limitations and qualifications, the Idaho court ordered Richard J. Sabella to

execute the Transfer Documents on behalf of the Debtors in the forms required by the Insured

Covenants Agreements and as presented by the TJV Parties "without any qualification or purported

limitation on effectiveness." [3]  These unqualified Transfer Documents have now been executed by

Mr. Sabella, and the Debtors' Idaho counsel has represented to the TJV Parties' Idaho counsel that

the Transfer Documents will be delivered to the TJV Parties on March 24, 2023.  The TJV Parties

will file the Transfer Documents as a supplemental exhibit to this Motion promptly upon receipt.

The executed Transfer Documents include all of the provisions, including a general warranty deed

and a general release of all claims, that the Debtors previously acknowledged would "eliminate

the Debtors' fraudulent transfer claims, their appellate rights, and thus very purpose of this case."

Debtors' Emergency Stay Motion, ¶ 19.

The TJV Parties agree with the Debtors that the Debtors' rights and causes of action are

now eliminated and that "the very purpose" of these Bankruptcy Cases has been "eviscerated."  *Id.*

As observed by this Court, the Debtors have readily acknowledged that execution of unqualified

Transfer Documents would "invalidate causes of action uniquely assertible in the context of these

Bankruptcy Cases."  Stay Clarification Order, p. 5.  The Debtors' putative fraudulent transfer claim

against TJV formed the entire premise of these Bankruptcy Cases, but that claim is now released

by operation of the Transfer Documents mandated by the Idaho court after the Debtors failed to

post a bond to obtain a stay.  As such, to the extent the Debtors may previously have had some

---

[3] On March 22, 2023, after the Debtors initially delivered the Transfer Documents to the TJV Parties under a cover letter that included various qualifications and purported limitations on the effectiveness of Transfer Documents in violation of the Idaho Enforcement Order, the Idaho trial court entered a further order striking the Debtors' filing that contained these improper qualifications and expressly ordered the Debtors to execute and deliver the Transfer Documents "without any qualification or other purported limitation on effectiveness."  A copy of the Idaho court's *Order Granting Plaintiff TJV Associates, LLC's Motion for Expedited Order (i) Striking Defendants' Improper Supplement to Overruled Objection, and (ii) Ordering Defendants to Deliver Unqualified Transfer Documents* (the "Supplemental Enforcement Order") is attached hereto as Exhibit B.  The TJV Parties request this Court take judicial notice of the Idaho Enforcement Order and the Supplemental Enforcement Order.

narrow pathway to a future realization event that could justify a *future* bankruptcy case, that

pathway has now closed.  The Idaho Enforcement Order and the Debtors' delivery of deeds and

general releases, both of which are events that occurred after entry of the Dismissal Order, preclude

any conceivable argument by the Debtors that they have a meaningful pathway forward in these

Bankruptcy Cases.

> As this Court noted in its Dismissal Order:

> To say it more plainly, by Debtors' election to forego posting a supersedeas bond
> and yet pursue an appeal of the Idaho Judgment and Amended Idaho Judgment,
> Debtors left themselves subject to the directives of the Idaho state court regarding
> enforcement of the Amended Idaho Judgment. Upon compliance with such
> directives and conclusion of the Idaho Appeal, this Court will then be able to
> ascertain what remains as property of the estate, as determined under applicable
> state law.

*Id.*, p. 10-11.  The TJV Parties believe that time has come.

## CONCLUSION

In light of the Idaho Enforcement Order and delivery of the Transfer Documents, there is

nothing further to be done in these Bankruptcy Cases.  Considering these developments that

occurred after entry of the Dismissal Order together with the practical implications and legal

underpinnings of the Court's denial of the Motion to Dismiss—which issues were not briefed or

argued prior to entry of the Dismissal Order—the TJV Parties respectfully submit that sufficient

grounds exist to reconsider the Dismissal Order and enter a new order dismissing the Bankruptcy

Cases without prejudice.  In the event the Debtors—through realization of some contingent result

in the future—acquire tangible property that involves a going concern with assets and liabilities

that require restructuring and warrant the protections of chapter 11, nothing prevents the Debtors

from seeking bankruptcy protection at that time.

WHEREFORE, the TJV Parties respectfully request the Court to reconsider its Dismissal Order and enter a new order granting the Motion to Dismiss and dismissing the Bankruptcy Cases without prejudice to refile in the event a future material change in the Debtors' circumstances warrants the protections of chapter 11 bankruptcy at that time.

### **Local Rule 9073-1(D) Certification**

In an effort to satisfy the requirements of Local Rule 9073-1(D), counsel for the TJV Parties and counsel for the Debtors were unable to agree as to what information was required to be provided to counsel for the Debtors beyond the rules of procedure and the Orders by the Idaho Court after the date of the Dismissal Order.  As a result, the TJV Parties attest that they can only assume that the Debtors do not consent to the relief sought in the instant motion.

Dated: March 23, 2023

Respectfully submitted,

BERGER SINGERMAN LLP
*Counsel to TJV Parties*
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: */s/ Paul Steven Singerman*
     Paul Steven Singerman
     Florida Bar No. 378860
     singerman@bergersingerman.com
     Ilyse M. Homer
     Florida Bar No. 826316
     ihomer@bergersingerman.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case as indicated on the attached Electronic Mail Notice List on this 23rd day of March, 2023.

*/s/ Paul Steven Singerman*
Paul Steven Singerman

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Joaquin J Alemany**    joaquin.alemany@hklaw.com, HAPI@HKLAW.COM
- **Adam Gilbert**    agilbert@underwoodmurray.com, dstrand@underwoodmurray.com;agilbert_835@ecf.courtdrive.com;kmilliken@underwoodmurray.com;kmilliken@ecf.courtdrive.com
- **Ilyse M. Homer**    ihomer@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- **Thomas M. Messana**    tmessana@underwoodmurray.com, dstrand@underwoodmurray.com;tmessana@bellsouth.net;tmessana@ecf.courtdrive.com
- **Megan W Murray**    mmurray@underwoodmurray.com, dstrand@underwoodmurray.com;kmilliken@underwoodmurray.com;kmilliken@ecf.courtdrive.com
- **Martin P Ochs**    martin.p.ochs@usdoj.gov
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Jordan L Rappaport**    office@rorlawfirm.com, 1678370420@filings.docketbird.com
- **Paul Steven Singerman**    singerman@bergersingerman.com, asanchez@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- **Scott A. Underwood**    sunderwood@underwoodmurray.com, dstrand@underwoodmurray.com;msydow@underwoodmurray.com;sunderwood@ecf.courtdrive.com

**EXHIBIT A**

NO. _____
A.M. _____ FILED _____ P.M.

MAR 15 2023

TRENT TRIPPLE, Clerk
By ANNA MEYER
DEPUTY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF
IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| TJV ASSOCIATES LLC, a Delaware limited liability company, | |
| Plaintiff/Counterdefendant, | Case No. CV01-21-07907 |
| vs. | ORDER ON AMENDED RENEWED MOTION TO ENFORCE JUDGMENT |
| RA2 BOISE-OVERLAND L.L.C., a Delaware limited liability company; and RA2 BOISE-FAIRVIEW L.L.C., a Delaware limited liability company, | |
| Defendants/Counterclaimants. | |
| RA2 BOISE-OVERLAND L.L.C., a Delaware limited liability company; and RA2 BOISE-FAIRVIEW L.L.C., a Delaware limited liability company, | |
| Third-Party Plaintiffs, | |
| vs. | |
| 487 MORRIS ASSOCIATES LLC, a Delaware limited liability company; ALLIANCE TITLE AND ESCROW, LLC, a Delaware limited liability company. | |
| Third-Party Defendants. | |

## I.    INTRODUCTION

Before the Court is Plaintiff TVJ Associates, LLC's ("TJV") Amended Renewed Motion in Aid of Enforcement of Judgment Against Defendants, seeking to enforce the Amended Judgment entered in this case. The Amended Judgment quiets title to Defendants' respective retail properties ["Properties"] in TJV's name and requires Defendants to execute "Transfer Documents" conveying the Properties to TJV. Previously, the Court denied TJV's request to enforce the Amended Judgment and instead granted Defendants' motion to stay its enforcement pending appeal. The stay was subject to certain conditions, including the posting of a bond for $3.15 million. Rather than post the bond, Defendants filed for voluntary Chapter 11 bankruptcy

1

in Florida, thus staying this proceeding. The bankruptcy court recently lifted the stay with regard to this action.

Because Defendants have still not posted bond and have indicated they are unwilling and/or unable to do so, TJV again seeks to enforce the Amended Judgment.  Oral argument on the motion was held on March 9, 2023, after which the matter was taken under advisement. The Court finds enforcement of the Amended Judgment is warranted.

## II.    STANDARD

The power to stay the execution on a judgment and the power to vacate an order staying execution is within the court's discretion.  *Haley v. Clinton*, 123 Idaho 707, 709, 851 P.2d 1003, 1005 (Ct. App. 1993); *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 627, 485 P.3d 92, 123 (2021). Thus, the trial court must: (1) correctly perceive the issue as discretionary; (2) act within the outer boundaries of its discretion; (3) act consistently with the legal standards applicable to the specific choices available to it, and; (4) reach its decision by the exercise of reason. *State v. Le Veque*, 164 Idaho 110, 113, 426 P.3d 461, 464 (2018).

## III.    BACKGROUND

The crux of this dispute surrounds the enforceability of an Insured Covenant Agreement ("ICA") between Defendants RA2-Boise Overland, LLC and RA2-Boise Fairview LLC (collectively, "Defendants") and Plaintiff TJV Associates ("TJV"), the insurer's assignee. Under the § 4 of the ICA—which was executed in connection with a residual value insurance policy between Defendants and the insurer—in the event Defendants were unable to make the balloon payment to the lender (thus prompting the insurer to pay the lender's claim), Defendants agreed to:

> 1) "cause the deed to the [Properties] to be immediately delivered" to the insurer, and;
> 2) "comply with all of the terms and conditions of, and to execute all documents referred to in, the Contract Provisions Exhibit, attached hereto as Exhibit B."

ICA, ¶ 4.

The Contract Provisions Exhibit described documents to be executed and delivered in accordance with the ICA, summarized as follows: 1) a deed conveying fee simple absolute title to the Properties, free and clear of all encumbrances not otherwise identified; 2) a bill of sale for

personal property related to the Properties; 3) an affidavit as required by the title company to insure title to the Properties; 4) an assignment of contracts; 5) a "general release" by Defendants of TJV from "any and all liabilities or obligations of [TJV] to [Defendants] with regard to the Property and Policy;" and; 6) a "general release" by TJV of Defendants from "any and all liabilities or obligations of [Defendants] to [TJV] with regard to the Property, the Insured Covenants Agreement and the Policy." Reply, Exh. A.

Defendants did not pay their balloons and refused to convey title to the Properties to TJV. TJV subsequently brought this action against Defendants for breach of the ICA, specific performance and quiet title, seeking to compel Defendants' performance under the ICA. Defendants, in turn, filed counterclaims against TJV for declaratory judgment, breach of contract and a permanent injunction, contending primarily that the ICA was unenforceable.[1] Shortly after litigation ensured, Defendants filed a lis pendens on the Properties.

On summary judgment, the Court determined that the ICA was enforceable.[2] Thereafter, TJV drafted the "Transfer Documents" described by and in accordance with the Contract Provisions Exhibit of the ICA and provided them to Defendants' counsel for review and execution.[3] The Court then entered judgment in favor of TJV on its claims, dismissing Defendants' counterclaims and third-party claims with prejudice. *See*, Amended Judgment (Aug. 8, 2022). The Amended Judgment quieted title to the Properties in TJV's name and required that Defendants "execute and deliver to TJV the Transfer Documents in the forms agreed to and provided by TJV in accordance with the [ICAs] no later than August 8, 2022." *Id*.

The Transfer Documents drafted by TVJ include: 1) a Special Warranty Deed conveying title to the Properties to TJV free and clear of all encumbrances except those identified; 2) a Bill of Sale for personal property; 3) a Title Commitment Affidavit; 4) a General Assignment of Property Contracts, Permits and Warranties, and; 5) a General Release under which Defendants release TJV from "any and all liabilities or obligations of TJV to [Defendants] with regard to the [Properties] and Policy" and TJV releases Defendants from "any and all liabilities or obligations

---

[1] Defendants also filed a third-party complaint against 487 Morris Assoc., LLC—the assignee of the Defendants' loan documents—for declaratory judgment and a permanent injunction, arguing that the insurer's payment of the lender's claim under the residual value policy discharged Defendants' loans. Ultimately, the Court's determination on summary judgment in favor of TJV's claims rendered Defendants' third-party claims against 487 Morris moot.

[2] Memorandum Decision and Order on Motions for Summary Judgment and to Strike (July 12, 2022).

[3] Decl. Schwager, ¶¶ 1-2, Exhs. A & B (Sept. 9, 2022).

of [Defendants] to TJV with regard to the [Properties], the Insured Covenants Agreement and the Policy." Amend. Renewed Mtn., Exh. B.

Defendants declined to execute the Transfer Documents and appealed the Amended Judgment, which is pending. Soon after filing the appeal, Defendants and TJV filed competing motions to stay and enforce, respectively, the Amended Judgment. Defendants did not object to the content of the Transfer Documents at that time.

The Court granted Defendants' Motion to Stay, but ordered that six conditions be put in place during the pendency of the appeal to preserve the status quo. *See,* Order on Motions to Stay and Enforce Judgment (Oct. 25, 2022) ("Stay Order"). Among those conditions were that Defendants post bond of $3.15 million and that Defendants, including Mr. Sabella and his companies, not interfere with TJV's rights to the Properties. *Id.*, pp. 6-7.

A few weeks after the Court issued its Stay Order, TJV renewed its motion to enforce the Amended Judgment, noting that Defendants failed to post the bond as required under the Stay Order. The same day, Defendants each filed a voluntary Chapter 11 bankruptcy petitions in the U.S. Bankruptcy Court for the Southern District of Florida, thus effecting an automatic stay under 11 U.S.C. § 362.[4] (Bankruptcy Action). Defendants readily admit that they sought relief through bankruptcy because they did not have the resources to post the bond. In addition, Defendants filed an Adversary Complaint in the Bankruptcy Action seeking, *inter alia,* to avoid the transfer of the Properties ordered by the Amended Judgment as a fraudulent transfer. The automatic stay was subsequently lifted as to this action, including all post-judgment issues. The bankruptcy court has declined to dismiss the Bankruptcy Action pending the outcome of the appeal of the Amended Judgment.[5]

---

[4] The bankruptcy cases were commenced by entities asserting to be successors-in-interest by merger to Defendants: AUBSP Ownerco 8, LLC, f/k/a RA2 Boise-Fairview, LLC and AUBSP Ownerco 9, LLC, f/k/a RA2 Boise-Overland, LLC.

[5] Pursuant to IRE 201(c), the Court takes judicial notice of the following filings *In re: AUBSP Ownerco 8, LLC and AUBSP Ownerco 9, LLC*, Case No. 22-18613-MAM, United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division: 1) "Order Granting Motion of TJV Associates, LLC and 487 Morris Associates LLC for Relief from the Automatic Stay" (Feb. 2, 2023); 2) "Order Denying Emergency Motion to Clarify Stay Relief Orders" (March 9, 2023); 3) Adversary Complaint to Avoid and Recover Fraudulent Transfers and For Other Relief (Jan. 20, 2023), and; 4) Order Denying Motion to Dismiss (March 9, 2023). The first and third documents are attached as Exhibits A and D, respectively, to TJV's Amended Renewed Motion. The second and fourth documents are attached as Exhibit A to the Supplemental Filing of Bankruptcy Orders Entered March 9, 2023 and Request for Judicial Notice (March 10, 2023).

## IV.    ANALYSIS

TJV moves this Court to enforce the Amended Judgment on grounds that Defendants have neither posted the bond required under the Stay Order nor complied with the Amended Judgment by executing and delivering the Transfer Documents. Additionally, TJV asserts that Mr. Sabella has continued interfering with the Properties to the point where the tenants continue to refuse to pay TJV rents, and he is collaterally attacking the Amended Judgment through the Bankruptcy Action. In light of these actions, TJV requests an order: 1) directing Mr. Sabella, as Defendants' principal, to execute and deliver the Transfer Documents within five business days or be in civil contempt; 2) assess sanctions against Mr. Sabella personally in the amount of $5000 each day he is in contempt; 3) order Defendants to release the lis pendens on the Properties; 4) confirm that TJV is entitled to payment of all rents relating to the properties for the period of May 2021 (date Defendants breached the ICA) to present, and 5) confirm that TJV has no obligation to pay post-judgment rents collected on the Properties into the Court.

Defendants respond that they do not have the funds to post the bond required under the Stay Order and, therefore, they do not intend to do so.[6] However, Defendants object to TJV's attempts to enforce the Amended Judgment on three grounds: 1) certain agreements included in the Transfer Documents are unenforceable; 2) there is no basis to require Defendants to release their lis pendens on the Properties or rule as to TJV's entitlement to rent, and; 3) contempt is not appropriate since Defendants have not violated any order by this Court.[7]

### A.    Defendants' Challenge to Transfer Documents is Not Procedurally Proper and, Alternatively, Barred by Res Judicata.

Defendants' objection to the Transfer Documents regards aspects of the General Release, the Special Warranty Deed, the Assignment and the Title Commitment Affidavit, but it is primarily directed at whether the release of future unknown claims in the General Release is enforceable. TJV argues that the matter is barred by the doctrine of *res judicata* and/or is not properly before the Court. The Court agrees.

---

[6] Defendants have provided their Asset Schedules from their respective bankruptcy cases demonstrating that RA2-Fairview has assets of $332,172 and RA2-Overland has assets of $388,140. Obj., Exh. A.

[7] Defendants also point out that contempt sanctions against Sabella individually are not warranted since he is not a party to the proceedings.

Procedurally, the Court is not in a position to evaluate whether the Transfer Documents are enforceable. Defendants did not timely file a motion to reconsider the Amended Judgment on this issue under IRCP 11.2, nor have they sought relief from the Amended Judgment under IRCP 60(b).

Moreover, even if Defendants' challenge were procedurally proper, the doctrine of *res judicata* prevents Defendants from avoiding the Amended Judgment by offering a new defense to the ICA that it could have raised in the underlying litigation. The general rule is that once a judgment is entered, it is *res judicata* with respect to all issues which were or could have been litigated. *Waller v. State, Dep't of Health & Welfare*, 146 Idaho 234, 238, 192 P.3d 1058, 1062 (2008). *Res judicata* includes two legal concepts—issue preclusion or collateral estoppel and claim preclusion. *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012). Claim preclusion bars a claim or defense if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original action ended in final judgment on the merits, (2) the present claim involves the same parties as the original action, and (3) the present claim arises out of the same transaction or series of transactions as the original action. *Ticor Title Co. v. Stanion,* 144 Idaho 119, 125–27, 157 P.3d 613, 618–20 (2007).

These elements are met here. The enforceability of § 4 of the ICAs was the principal dispute of this action between Defendants and TJV. Among other claims, TJV sought a declaratory judgment that Defendants were required to execute and deliver the Transfer Documents referenced in § 4 of the ICAs and moved for summary judgment on its claims and Defendants' counterclaims. While Defendants raised several arguments for why they should not have to relinquish title to the Properties as required by § 4 of the ICAs, they never specifically challenged the enforceability of the Transfer Documents. Consequently, in finding § 4 was enforceable, the Court entered judgment in TJV's favor and ordered that Defendants "execute and deliver the Transfer Documents in the form agreed to and provided by TJV in accordance with the Insured Covenant Agreements[.]" Am. Jdgmt.

Defendants maintain that they did not challenge the Transfer Documents previously because the documents were never before the Court. While it is correct TJV first presented the Transfer Documents to Defendants in July of 2022—after the Court's summary judgment order was issued—the Transfer Documents simply memorialize the documents described by § 4 and the Contract Provisions Exhibit to the ICAs. Thus, Defendants could have disputed the

enforceability of the contemplated documents early on in the litigation, yet never did. Further, even after receiving the Transfer Documents following entry of the Amended Judgment, Defendants voiced no objection to them in their Motion to Stay and did not move for post-judgment relief; they simply sought to stay enforcement of the Amended Judgment to preserve the status quo. Thus, Defendants had ample opportunity to challenge the enforceability of the Transfer Documents yet never did so. Consequently, even if Defendants' challenge were properly before the Court, it is barred by *res judicata.*

### B.    Ordering Release of Lis Pendens is Beyond Scope of Amended Judgment and Premature.

In addition to enforcing the Amended Judgment, TJV also seeks to have this Court order Defendants to release their lis pendens on the Properties. Defendants contend there is no legal basis to release the lis pendens. Defendants are correct. An order enforcing a judgment cannot go beyond the terms of the judgment enforced. *Feustel v. Stevenson*, 119 Idaho 698, 700, 809 P.2d 1177, 1179 (Ct. App. 1991). Since the Amended Judgment did not address the lis pendens, the Court cannot order its removal in enforcing that judgment.

Additionally, I.C. § 5-505 states that a lis pendens is appropriate in an action "affecting the title or the right of possession of real property," which this action does. It serves as notice of the existence of a claim affecting certain real property; it does not change a party's legal rights to the property. *Jerry J. Joseph C.L.U. Ins. Assocs., Inc. v. Vaught*, 117 Idaho 555, 557–58, 789 P.2d 1146, 1148–49 (Ct. App. 1990) (citing I.C. § 5–505). While a lis pendens might deter a potential purchaser of the Properties if TJV chooses to sell pending the appeal, it does not alter TVJ's rights to the Properties and is not otherwise improper.

### C.    Contempt is Premature.

TJV also seeks to have this Court hold Defendants and Mr. Sabella, individually, in contempt of Court if the Transfer Documents are not timely executed. As TJV conceded at the hearing, the issue of contempt is premature at this time. Under IRCP 75(c), non-summary contempt proceedings for violation of a court order must be initiated by motion or by the court. At this stage, no court order has been violated. In the event Defendants do violate a court order, TJV may assess whether to move for contempt at that time.

### D.    Confirming Ownership of Rents Is Beyond Scope of Amended Judgment.

TJV contends that the tenant of the Properties continues to refuse to pay over rents to TJV for the period of time after Defendants breached the ICAs, i.e., from May of 2021 to

present. TJV asserts that these rents, which total $790,020, are payable to TJV now that the ICA has been found to be enforceable. Arguing that Defendants have continued to dispute TJV's right to receive these rents in other litigation, TJV seeks to have the Court "confirm" that it is entitled to payment of this amount.

However, TJV never sought payment of rents as a damage in this case and the Amended Judgment is silent as to payment of rent. Again, an order enforcing a judgment cannot go beyond the terms of the judgment enforced. *Feustel (supra).* While a condition of the Stay Order was that rents from the time of the Amended Judgment forward be paid by the tenant into the Court for the pendency of the appeal, this was only to prevent either party from benefitting from the rent payments until the Idaho Supreme Court determined whether TJV was entitled to the Property. Thus, it would be improper for the Court to issue an order as to ownership of rents.

### E.    Enforcement of the Amended Judgment is Warranted.

Having dispensed with Defendants' objections, the Court finds enforcement of the Amended Judgment is warranted given Defendants' refusal to post the bond required by the Stay Order. In accordance with ¶ 2 of the Amended Judgment, Defendants are required to execute the Transfer Documents attached as Exhibit B to TJV's Amended Renewed Motion .

Under Rule 70(a), IRCP, if a judgment requires a party "to convey land, deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done at the disobedient party's expense by another person appointed by the court." IRCP 70(a). In light of the fact that Defendants refused to execute the Transfer Documents within the time required by the Amended Judgment and refused to comply with the conditions of the Stay Order, the Court finds it necessary to appoint a person to execute the documents under IRCP 70(a).

At TJV's request, the Court will order Mr. Sabella to execute the Transfer Documents and deliver them to TJV within five (5) days of this Order.[8] In the event Mr. Sabella refuses to execute the Transfer Documents, TJV may move for contempt and/or seek to have the Court appoint another individual to execute the Transfer Documents. Finally, given Defendants' lack of

---

[8] The Court notes that ¶ 5 of the proposed Title Commitment Affidavit included in the Transfer Documents required Defendants to aver that they have not filed for bankruptcy. Since they are currently in the midst of bankruptcy proceedings, that provision will need to be excised.

objection to the request, the Court will not require TJV to pay any rents collected from the tenants of the Properties into the Court pending the outcome of appeal.

**IV.    ORDER**

Based on the foregoing, the TJV's Amended Renewed Motion in Aid of Enforcement of Judgment Against Defendants is GRANTED. Pursuant to IRCP 70(a), the Court hereby appoints Richard Sabella to execute and return to TJV the Transfer Documents attached to TJV's Motion as Exhibit B within five (5) days of the filing date of this Order.

IT IS SO ORDERED.

Dated this _____ day of March, 2023.

Steven Hippler
District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on _____ 03/15/2023 _____, I mailed (served) a true and correct copy

of the ORDER ON AMENDED RENEWED MOTION TO ENFORCE JUDGMENT to:

| | | |
|---|---|---|
| Sheila R. Schwager | | ( ) U.S. Mail, Postage Prepaid |
| Hailee Elledge | | ( ) Interdepartmental Mail |
| **HAWLEY TROXELL ENNIS & HAWLEY LLP** | | (X) Electronic Mail |
| EMAIL: sschwager@hawleytroxell.com | | ( ) Facsimile |
|        helledge@hawleytroxell.com | | |
| J.B. Evans | | (X) U.S. Mail, Postage Prepaid |
| **DORSEY & WHITNEY, LLP** | | ( ) Interdepartmental Mail |
| 101 S. Capitol Blvd., Ste. 1701 | | ( ) Electronic Mail |
| Boise, ID 83702 | | ( ) Facsimile |

TRENT TRIPPLE

Clerk of the District Court

By: _____

Deputy Clerk

10

**EXHIBIT B**

NO.
A.M. _____ FILED _____ P.M.

MAR 22 2023

TRENT TRIPPLE, Clerk
By ANNA MEYER
DEPUTY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| TJV ASSOCIATES, LLC, a Delaware limited liability company, | Case No. CV01-21-07907 |
| Plaintiff, | ORDER GRANTING PLAINTIFF TJV ASSOCIATES, LLC'S MOTION FOR EXPEDITED ORDER (I) STRIKING DEFENDANTS' IMPROPER SUPPLEMENT TO OVERRULED OBJECTION, AND (II) ORDERING DEFENDANTS TO DELIVER UNQUALIFIED TRANSFER DOCUMENTS |
| vs. | |
| RA2 BOISE-OVERLAND L.L.C., a Delaware limited liability company, and RA2 BOISE-FAIRVIEW L.L.C., a Delaware limited liability company, | |
| Defendants. | |

RA2 BOISE-OVERLAND L.L.C., a Delaware limited liability company, and RA2 BOISE-FAIRVIEW L.L.C., a Delaware limited liability ,

Counterclaimants,

vs.

TJV ASSOCIATES, LLC, a Delaware limited liability company,

Counterdefendant.

RA2 BOISE-OVERLAND L.L.C., a Delaware limited liability company, and RA2 BOISE-FAIRVIEW L.L.C., a Delaware limited liability company,

Third-Party Plaintiffs,

vs.

487 MORRIS ASSOCIATES LLC, a Delaware limited liability company; ALLIANCE TITLE AND ESCROW, LLC, a Delaware limited liability company,

Third-Party Defendants.

59067.0001.15586477.1

The Court, after reviewing Plaintiff TJV Associates, LLC's ("TJV") Motion for Expedited Order (I) Striking Defendants' Improper Supplement to Overruled Objection, and (II) Ordering Defendants to Deliver Unqualified Transfer Documents ("Plaintiff's Motion to Strike") and Defendants' Response thereto, and after considering the record herein, this Court finds good cause that Plaintiff's Motion to Strike should be granted.  Based on the foregoing, it is HEREBY ORDERED THAT:

Plaintiff's Motion to Strike is GRANTED;

Defendants' Supplement to Objection to Amended Renewed Motion in Aid of Enforcement of Judgment Against Defendants, which was filed by Defendants on March 15, 2023, is STRICKEN from the record; and

Defendants are ORDERED to deliver to TJV within two days of filing of this Order fully executed Transfer Documents that are not subject to any qualification or other purported limitation on effectiveness.

DATED this 22 day of March, 2023.

Steven Hippler
District Judge

ORDER GRANTING MOTION FOR EXPEDITED ORDER (I) STRIKING
DEFENDANTS' IMPROPER SUPPLEMENT TO OVERRULED OBJECTION, AND
(II) ORDERING DEFENDANTS TO DELIVER UNQUALIFIED TRANSFER
DOCUMENTS - 2

59067.0001.15586477.1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused to be served a true copy of the foregoing ORDER GRANTING ORDER GRANTING PLAINTIFF TJV ASSOCIATES, LLC'S MOTION FOR EXPEDITED ORDER (I) STRIKING DEFENDANTS' IMPROPER SUPPLEMENT TO OVERRULED OBJECTION, AND (II) ORDERING DEFENDANTS TO DELIVER UNQUALIFIED TRANSFER DOCUMENTS by the method indicated below, and addressed to each of the following:

Wendy Olson
STOEL RIVES LLP
101 S. Capitol Boulevard Suite 1900
Boise, ID  83702

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail:
wendy.olson@stoel.com
☐ Facsimile: 208.389.9040
☑ iCourt

J.B. Evans
DORSEY & WHITNEY LLP
101 S. Capitol Blvd., Ste 1701
Boise, ID 83702

*Attorneys for RA2 Boise-Fairview, L.L.C., and RA2 Boise-Overland, L.L.C.*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail: evans.jb@dorsey.com
☐ Facsimile
☑ iCourt

Sheila R. Schwager
Hailee Elledge
HAWLEY TROXELL ENNIS & HAWLEY
877 Main St, Ste. 200
Boise, ID 83701

*Attorneys for TJV Associates, LLC*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail:
sschwager@hawleytroxell.com
helledge@hawleytroxell.com
☐ Facsimile:
☑ iCourt

Dated: 03/22/2023

_____
Court Clerk

ORDER GRANTING MOTION FOR EXPEDITED ORDER (I) STRIKING DEFENDANTS' IMPROPER SUPPLEMENT TO OVERRULED OBJECTION, AND (II) ORDERING DEFENDANTS TO DELIVER UNQUALIFIED TRANSFER DOCUMENTS - 3

59067.0001.15586477.1